IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| GREGORY VALENTINE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 1:18-cv-00021 |
| HELEN FORD, et al., | ) ) | JUDGE CAMPBELL |
| Defendants. | ) ) | |

## MEMORANDUM

Plaintiff Gregory Valentine, an inmate of the Wayne County Annex to the Turney Center Industrial Complex in Clifton, Tennessee, has filed a pro se complaint under 42 U.S.C. § 1983 for violation of his civil rights. (Doc. No. 1.) He has also filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.) The case is before the Court for a ruling on the IFP application and for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e. For the reasons given below, and by Order entered contemporaneously herewith, Plaintiff's application to proceed IFP will be **GRANTED** and his claims under the Eighth Amendment and the Fourteenth Amendment Due Process Clause will be **DISMISSED** pursuant to Section 1915(e)(2), for failure to state a claim upon which relief can be granted. His claim under the Fourteenth Amendment Equal Protection Clause will be allowed to proceed.

**I.     Application to Proceed IFP**

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350 required by 28 U.S.C. § 1914(a).

1

Such an application to proceed IFP must be supported by an affidavit and accompanied by a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Plaintiff's application does not include a statement showing his trust fund account activity, but does include a notarized certification from an appropriate prison official reflecting his current account balance of five cents, and his average balance over the prior six months of $28.00. (Doc. No. 2 at 2.) It is apparent from Plaintiff's submission that he lacks the funds to pay the entire filing fee in advance, and his application to proceed IFP will therefore be **GRANTED**. The Court's accompanying Order will assess the filing fee in installments.

## II.     Initial Review of the Complaint

### A.     PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

B. **Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

C. **Allegations and Claims of the Complaint**

Plaintiff alleges that, prior to his release on parole in July 2014, he had been incarcerated within the Tennessee Department of Correction (TDOC) for the offenses of conspiracy and money laundering. (Doc. No. 1 at 10.) He alleges that after having lived and worked without incident since being paroled, on March 13, 2017, he arrived home from work to find Defendant Maria Patino-Lopez, his roommate's ex-fiancé, in his apartment. (*Id.*) Plaintiff alleges that Ms. Patino-Lopez should not have been present in or around his apartment, because two orders of protection

had been issued against her and she should have been forced to relinquish her key to the apartment. (*Id.* at 10–11.) Plaintiff alleges that he then "flagged down" a police officer, explained the situation to him, and entered the apartment along with the officer. (*Id.* at 11.) Plaintiff approached Ms. Patino-Lopez, asked her to leave, and "attempted to usher [her] out by placing his hand on the small of her back and walking her to the door." (*Id.*) At that point, Ms. Patino-Lopez "became irate and bent forward while stepping back and the Plaintiff's hand went up her back towards her neck." (*Id.*) The officer then arrested Plaintiff for assault. (*Id.*)

Plaintiff posted bond on the same day, and on the morning of March 14, 2017, reported the incident to his parole officer, Defendant Tamarrah Adams. (*Id.* at 11–12.) Later that day, Plaintiff was arrested and charged with a parole violation on grounds that he failed to obey state or municipal law, and that he engaged in assaultive behavior. (*Id.* at 12, 38.) He was then committed back to the custody of the TDOC pending a parole revocation hearing, which was held three months later, on June 15, 2017. (*Id.* at 12–13.) The following day, June 16, 2017, Plaintiff's parole was revoked. (*Id.* at 13.)

Ten days after Plaintiff's parole was revoked, on June 26, 2017, the Davidson County criminal court dismissed the assault charge against him, without Plaintiff ever appearing before that court. (*Id.*) Plaintiff subsequently learned of an amendment to the Tennessee parole statute, Tenn. Code Ann. § 40-28-122(g), which had been enacted on April 24, 2017 and which "appl[ies] to a paroled prisoner who is reincarcerated while awaiting . . . a parole revocation hearing . . . or following revocation or rescission of parole, and the sole reason the paroled prisoner was arrested and reincarcerated was because the paroled prisoner was charged with a new offense." *Id.* § 40-

28-122(g)(1).[1]  The statute states that in such situations, the prisoner must be allowed to submit evidence to show that, e.g., the charge which resulted in reincarceration was "dismissed or retired based on the merits of the case."  *Id.* § 40-28-122(g)(1)(A).  In the event of such a showing, the paroled and reincarcerated prisoner shall be entitled to "a hearing on the record" to determine the fact of the matter.  *Id.* § 40-28-122(g)(3).  If, after conducting such hearing, the Board of Parole determines that the parolee was reincarcerated solely because of a charge that was dismissed, "the board may vote to order the release and reinstatement on parole of the prisoner in accordance with applicable law."  *Id.* § 40-28-122(g)(4).  Plaintiff alleges that,

> [a]fter learning about the law the Plaintiff contacted the D.A. and Judge in Davidson County Criminal Court and obtained evidence showing that the assault case was dismissed in June of 2017.  Once the Plaintiff gathered his proof he appealed his parole matter to both Helen Ford and David Liner of the Tennessee Bd. of Paroles.  On July 26, 2017 the Executive Dir. David Liner of the Tennessee Bd. of Paroles responded to the Plaintiff's appeal stating that "the Plaintiff case does not qualify for review" and for the following reasons:  "Your revocation was not based solely upon the filing of new charges."

(Doc. No. 1 at 14.)

In addition to Defendants Patino-Lopez and Adams, Plaintiff names as Defendants the Tennessee Board of Probation and Parole and its individual officers Helen Ford, Jim Purviance, David Liner, Columba A. McHale, and Richard Montgomery.  (*Id.* at 2–5.)  He further names as Defendants the arresting officer (John Doe), Judge Dianne Turner, Assistant District Attorney Benjamin Selecman, and Assistant Public Defender Erin Robinson.  (*Id.* at 2, 5–6.)  All individual Defendants except Ms. Patino-Lopez are sued in their official and individual capacities.  Plaintiff gives the following summary of his claims against these Defendants:

---

[1]   Plaintiff has attached a copy of the amended statute to his complaint.  (Doc. No. 1 at 26–28.)

5

> Fourteenth Amendment (violation of Due Process when officials from the Tenn. Bd. of Paroles willfully circumvented and subverted state law, thus creating a liberty interest) [and] violation of Eighth Amendment right when Plaintiff was wrongfully imprisoned as a result of 14th amendment violation.
>
> The Plaintiff further contends that upon the Tennessee Bd. of Paroles willful actions in circumventing state law concerning parolees who were alleged to have committed a new offense, but said alleged offense was dismissed subsequent to revocation, and Plaintiff had to remain incarcerated although found innocent of alleged offense disproportionately targets people of color like himself in violation of the Equal Protection [Clause] of the Fourteenth Amendment.

(*Id.* at 9.)

Plaintiff elaborates on his procedural due process claims later in his complaint, explaining that he "never saw the inside of a courtroom as it relates to the original offense for assault," which was summarily dismissed after his parole was revoked. (*Id.* at 15.) Plaintiff claims that this lack of judicial process as it relates to the assault charge was a detriment to his ability to represent himself at his revocation hearing, as he was without a record from which to produce evidence in his favor. (*Id.* at 15–16.) He further asserts that he "was never afforded any hearing concerning his appeal [from the Board's revocation decision] after showing the offense was dismissed," despite the language of § 40-28-122(g)(3) requiring "a hearing on the record to determine" if the charge's dismissal triggered this statutory provision, and if he was reincarcerated solely because of the assault charge. (*Id.* at 17.) Rather, Plaintiff merely received a letter stating that he was not entitled to further review because the revocation of his parole was not based solely upon the assault charge. Plaintiff claims that this violation of the parole statute's hearing requirement has deprived him of his liberty without due process of law in violation of the Fourteenth Amendment, with the result that he is being "incarcerated for nothing" in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.* at 17.)

Plaintiff also alleges, "as it relates to Equal Protection," that some "prisoners are getting review and released and others are not[.]" (*Id.* at 18.) He requests a federal investigation into "the practice of the Defendants failing to conduct hearings on parolees whose offenses have been dismissed; [and into] why there are disparities between one parolee over another parolee who has had new offenses that were dismissed and that parolee is released[.]" (*Id.* at 20.)

Plaintiff asks the Court to "determine how many parolees are held in violation pending revocation without due process of law in a criminal court" on the charge that violated their parole, "to help aid[] in criminal justice reform within the State of Tennessee." (*Id.* at 21.) He further seeks "relief that will render invalid the state procedures being applied by the Defendants in their attempt to circumvent state law, used to deny parole eligibility"; injunctive and declaratory relief against all Defendants in their official capacity, to immediately stop their actions in violation of all parolees' rights; and, damages from all individual defendants in the aggregate amount of $571,500.00. (*Id.* at 20–21.)

### D. Legal Analysis

#### 1. Wrongful Imprisonment Claim

It is well established that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement . . . even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973)). The *Heck* doctrine is not limited to cases involving a criminal conviction and sentence, but applies equally to an inmate's Section 1983 suit that attacks the merits of a decision to revoke his parole. *See Norwood v. Mich. Dep't of Corr.*, 67 F. App'x 286, 287 (6th Cir. 2003) (citing *Heck* and explaining that "Norwood's allegation that the defendants conspired to revoke his parole necessarily implies the invalidity of his confinement,

7

and he has not shown that his parole revocation has been overturned by either a Michigan state court or a federal habeas corpus decision. Such a claim is not cognizable under § 1983.").

However, Plaintiff explicitly frames this action not as an attack on the initial decision to revoke his parole, but as "a challenge to an established state procedure wherein the State has violated the Plaintiff's 14th and 8th amendment rights," citing *Wilkinson v. Dotson*, 544 U.S. 74 (2005). (Doc. No. 1 at 19.) The Supreme Court in *Wilkinson* determined that inmates may use Section 1983 to challenge "state procedures used to deny parole eligibility . . . and parole suitability," so long as the challenge is purely procedural and would affect only the requirement that a hearing be held, rather than directing the outcome of the parole issue and therefore the duration of the inmate's confinement. Section 1983, rather than habeas corpus, is an appropriate vehicle for such procedural claims because success on the claim would mean "at most a new parole hearing at which [state] parole authorities may, in their discretion, decline to shorten [the inmate's] prison term," rather than immediate release from confinement or a shorter stay in prison based on the necessary implication that continued or prolonged imprisonment would be unconstitutional. *Wilkinson*, 544 U.S. at 82.

Despite the framing of this action under *Wilkinson*, the Court finds that Plaintiff's Eighth Amendment claim is not cognizable under Section 1983, as he seeks recovery for being "wrongfully imprisoned" and "incarcerated for nothing," and claims damages meant to compensate him for losses resulting from the allegedly wrongful incarceration (i.e., loss of wages, repossessed vehicle, tarnished credit, etc.). (Doc. No. 1 at 9, 17, 21.) This claim amounts to an attack on the merits of the parole board's revocation decision in light of the dismissal of the assault charge, and success on the claim would demonstrate the invalidity of his continued incarceration. It is therefore barred under *Heck* until he can show that his parole revocation has been overturned

8

or set aside through state proceedings or a federal writ of habeas corpus. *See Bradley v. Michigan Dep't of Corr.*, No. 14-14573, 2015 WL 3620539, at *3 (E.D. Mich. June 9, 2015) ("Plaintiff has not alleged that the decisions to revoke his parole and re-incarcerate him were invalidated by state officials or called into question on appeal or by a federal court's issuance of the writ of habeas corpus, and success in this action would necessarily demonstrate the invalidity of his re-incarceration. Therefore, he is barred from challenging the Defendants' parole-revocation decisions in this civil rights action.").

While Plaintiff's request for monetary damages from Defendants in their individual capacities (Doc. No. 1 at 21) is barred under *Heck*, the complaint requests declaratory and injunctive relief from the execution by these individual officials of "an established state procedure" which resulted in his failure to be considered for re-parole after dismissal of the charge which led to revocation. (*Id.* at 19.) Plaintiff challenges the constitutionality of that state procedure under the Fourteenth Amendment guarantees of equal protection and procedural due process. These claims are cognizable under Section 1983, and are discussed below.

### 2. Equal Protection Claim

Plaintiff claims that an equal protection violation occurred when Defendants failed in his case to follow state law applicable to parolees reincarcerated due to a new offense which is subsequently dismissed, asserting that this failure to follow state law "disproportionately targets people of color like himself in violation of the Equal Protection [Clause.]" (Doc. No. 1 at 9.) While this assertion is stated in conclusory fashion, Plaintiff specifies it by alleging that Defendants have a practice of "failing to conduct hearings on parolees whose new offenses have been dismissed," and that there are "disparities between one parolee over another parolee who has had new offenses that were dismissed and that parolee is released[.]" (*Id.* at 20.)

9

"The Equal Protection Clause of the Fourteenth Amendment provides that a state may not 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Shabazz v. Schofield*, No. 3:13-cv-00091, 2013 WL 704408, at *19 (M.D. Tenn. Feb. 26, 2013) (quoting U.S. Const., amend. XIV). A plaintiff may claim an equal protection violation by alleging that the state is "mak[ing] distinctions that 1) burden a fundamental right; 2) target a suspect class; or 3) intentionally treat one individual differently from others similarly situated without any rational basis." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009) (citing *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005)). If the plaintiff claims that he, as a "class of one," has been intentionally treated differently from others similarly situated, he must show similarity in all material respects, *id.*, which in the case at bar would include "all relevant aspects of the parole decision." *Henderson v. Bredesen*, No. 3:04-0043, 2005 WL 2230033, at *2 (M.D. Tenn. Aug. 9, 2005), *report and recommendation adopted*, No. 3:04-0043 (M.D. Tenn. Aug. 23, 2005), *aff'd*, No. 05-0642 (6th Cir. Oct. 30, 2006). A plaintiff may also claim an equal protection violation where he is discriminated against because of his membership in a class that is not "suspect" or "protected," though in that case "the plaintiff's class 'merits constitutional protection only insofar as the state actor could have had no conceivable rational basis for distinguishing it.'" *Hawkins v. Tenn. Bd. of Probation & Paroles*, No. 07-2326-B/P, 2007 WL 1574241, at *5 (W.D. Tenn. May 29, 2007) (quoting *Purisch v. Tennessee Technological Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996)).

Plaintiff would have the state practice at issue subjected to strict scrutiny in this Court. (Doc. No. 1 at 18.) However, strict scrutiny is properly employed only in the first two categories above: where the state practice is alleged to interfere with a fundamental right or to purposefully

discriminate against a suspect class[2] of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). There is no fundamental right, nor any constitutional right at all, to release on parole. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Moreover, as in *Shabazz*, while the state practice challenged here is alleged to disproportionately target people of color, Plaintiff "does not actually allege that his treatment is based on his race, and does not otherwise allege that he is a member of a suspect class." *Shabazz*, 2013 WL 704408, at *19. In order to require strict scrutiny of the state parole practice at issue here, the practice must be alleged to have a racially discriminatory purpose, not merely a racially disproportionate impact. *Washington v. Davis*, 426 U.S. 229, 239–45 (1976). However, it need not be determined at this initial stage whether Plaintiff's allegation of the disproportionate targeting of people of color is sufficient to require strict scrutiny of Defendants' alleged practice because, in any event, Plaintiff states an equal protection claim by alleging that he was intentionally treated differently than other reincarcerated parolees, without any rational basis, because his underlying offense had been dismissed.

While the complaint does not identify any particular comparator whose parole decision was similar in all relevant aspects to Plaintiff's but who was treated differently,[3] it does appear to allege intentionally disparate treatment among the population of reincarcerated parolees, as

---

[2] "[S]uspect classes are defined as groups who historically have been subjected to discrimination; whose obvious, immutable, or distinguishing characteristics mark them as a discrete community; or who are politically powerless due to their minority status." *Irvin v. City of Clarksville Police Dep't*, No. 3:13-CV-0994, 2013 WL 5555338, at *3 (M.D. Tenn. Oct. 7, 2013) (citation omitted).

[3] The only other inmate identified in the complaint is John Leon Smith, an inmate who, like Plaintiff, appears to have had his parole revoked and not reinstated, without being heard under Tenn. Code Ann. § 40-28-122(g). (Doc. No. 1 at 19 (referring the Court to an article in The Tennessean, found at https://www.tennessean.com/story/news/2017/09/19/tennessee-parole-board-flaws-john-leon-smith/655277001/).)

"[e]very parolee's parole is revoked based upon a rule violation and not just the offense itself," and while "the Defendants [are] failing to conduct hearings on parolees whose offenses have been dismissed," "other prisoners are getting review and released and others are not[.]" (Doc. No. 1 at 18, 20.) Construing the complaint liberally and in the light most favorable to Plaintiff as the Court must at the screening stage, such allegations, combined with the cryptic justification given by the parole board for denying his appeal for a hearing ("Your revocation was not based solely upon the filing of new charges."), are sufficient at this initial stage of the proceedings to state a colorable equal protection claim.

### 3. Due Process Claim

The Court finds that the complaint fails to state a plausible claim for violation of Plaintiff's Fourteenth Amendment right to due process. Plaintiff cites the state's creation of a liberty interest (Doc. No. 1 at 9) and asserts that his "freedom has been taken without any Due Process in Criminal Court and a willful violation of state law on behalf of the Defendants in relation to their failure to comply [with their] own state[']s law for parolees having faced new offenses that are subsequently dismissed." (*Id.* at 17.) Despite this assertion of his loss of freedom without due process in criminal court, Plaintiff does not claim that the lack of legal proceedings on the assault charge resulted in his unlawful detention, or even that the arrest itself was unlawful; rather, he recognizes that he was detained pursuant to the parole violation charges pending his revocation hearing (*id.* at 12), and argues that he was disadvantaged at that hearing by the lack of an "opportunity to address the arresting officer and Maria Patino-Lopez in a court of law." (*Id.* at 16.)

However, "[d]ue process in parole proceedings is satisfied as long as the procedure used affords the inmate an opportunity to be heard, and, if parole is denied, the Parole Board informs the inmate of the basis upon which it denied parole." *Seagroves v. Tenn. Bd. of Probation &*

12

*Parole*, 86 F. App'x 45, 48 (6th Cir. 2003) (citing *Greenholtz*, 442 U.S. at 16). Notwithstanding the failure to proceed in criminal court on the underlying charge, Plaintiff received a revocation hearing where he "expressed himself adamantly" that the hearing should be postponed until the assault prosecution had been adjudicated, and where he "expressed to the revocation hearing officer that the facts presented by the arresting officer were not accurate." (Doc. No. 1 at 13.) He was subsequently informed that his parole had been revoked based on the pending misdemeanor charge. (*Id.* at 34.) While Plaintiff disputes the propriety of proceeding with the hearing prior to the resolution of the underlying charge, "[i]t is well settled that a court is not constitutionally bound to postpone a probation revocation hearing pending conclusion of a federal or state criminal proceeding upon which parole revocation is sought." *Lynott v. Story*, 929 F.2d 228, 230 (6th Cir. 1991) (citing cases). Thus, the Court finds that this argument is without merit, and proceeds to consider Plaintiff's due process argument based on the parole board's decision—contrary to state law—to decline to rehear his case after being notified that the assault charge had been dismissed.

A violation of state law is not alone sufficient to establish a federal constitutional violation, *Monroe v. McNairy Cnty., Tenn.*, 520 F. Supp. 2d 917, 920 (W.D. Tenn. 2007), and there is "no constitutional or inherent right of a convicted person to be conditionally released" on parole. *Crump v. Lafler*, 657 F.3d 393, 397 (6th Cir. 2011). Therefore, a constitutionally protected liberty interest arises in this context only if a prisoner has a "legitimate claim of entitlement to parole . . . created . . . by the operation of state law." *Id.* (citation and internal quotation omitted). As referenced earlier in this Memorandum, the 2017 amendment to the Tennessee parole statute, Tenn. Code Ann. § 40-28-122(g), requires that, upon an appropriate showing that the charge which resulted in reincarceration was dismissed on its merits, "the board, or the board's designee, shall conduct a hearing on the record to determine if" such dismissal in fact occurred, and if the

reincarceration was "solely because of this charge and the parolee remains incarcerated . . . ." Tenn. Code Ann. §40-28-122(g)(3). Plaintiff contends that this statutory hearing requirement creates a liberty interest protected by the federal due process guarantee, and that the denial of a hearing in his case therefore violated his constitutional rights.

The Sixth Circuit has long recognized that Tennessee inmates have no state-created liberty interest in the possibility of parole, "[b]ecause Tennessee's statutory scheme places the decision to grant parole within the complete discretion of the parole board[.]" *Hawkins*, 2007 WL 1574241, at *3 (citing, e.g., *Wright v. Trammell*, 810 F.2d 589, 591 (6th Cir. 1987)). Section 40-28-117(a) of the Tennessee Code defines parole as "a privilege and not a right" and allows that, if the parole board deems parole to be appropriate, "the prisoner may be paroled and if paroled shall be allowed to go upon parole . . . upon the terms and conditions as the board shall prescribe[.]" In the case of a prisoner facing revocation because of a charged parole violation, the board may act upon the charges by requiring the prisoner to serve the remainder of his original sentence in prison "if it sees fit," or may "impose the punishment . . . it deems proper[.]" Tenn. Code Ann. § 40-28-122(d)(1). Given the discretion vested in the parole board, "a prisoner may seek to enforce statutes or regulations that govern the parole process as a matter of state law, but 'procedural statutes and regulations governing parole do not [alone] create federal procedural due process rights.'" *Wershe v. Combs*, 763 F.3d 500, 506 (6th Cir. 2014) (quoting *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994)). It is only when the state places substantive limitations on the parole board's discretion that a protected liberty interest arises. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983).

The state statute at issue here uses mandatory language that, upon notice and a proper showing by the formerly paroled prisoner, requires a hearing on the record. Tenn. Code Ann. § 40-28-122(g)(3). But "Tennessee's requirement that a hearing be held . . . cannot in itself create a

14

protectible liberty interest." *Beard v. Livesay*, 798 F.2d 874, 877 (6th Cir. 1986). "[I]f Tennessee had gone beyond procedural guidelines by using 'mandatory language' in connection with 'specific substantive predicates,' a liberty interest may be found." *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)). However, § 40-28-122(g) merely prescribes the procedure whereby review and (potentially) a hearing may be conducted concerning "the circumstances under which the new offense was dismissed," even if such review would otherwise be precluded by other procedural rules such as "the time limitation for appeal" or "any limitation based on previously filed appeals." Tenn. Code Ann. § 40-28-122(g)(1). The statute does not place any substantive limitations upon the parole board's discretion, but leaves the post-hearing outcome up to a vote. Tenn. Code Ann. § 40-28-122(g)(4) ("[A]fter the board or the board's designee conducts a hearing on the record, . . . the board may vote to order the release and reinstatement on parole of the prisoner in accordance with applicable law.").

Because the amended parole statute leaves the substantive determinations in revocation cases to the board's discretion, the complaint fails to state a procedural due process claim based on any state-created liberty interest. Accordingly, this claim will be dismissed.

### 4. Proper Defendants

Although Plaintiff's equal protection claim will be allowed to proceed, clearly Judge Turner, Assistant District Attorney Selecman, and Assistant Public Defender Robinson are not properly sued over their roles in resolving Plaintiff's assault charge, due to their judicial immunity, prosecutorial immunity, and failure to qualify as a state actor, respectively. *See Reece v. Whitley*, Nos. 3:11cv1122, 3:11-mc-00067, 2011 WL 5925560, at *2–3 (M.D. Tenn. Nov. 22, 2011) (reciting and applying standards of judicial and prosecutorial immunity); *Pearson v. Mooris*, No. 3:15-CV-0578, 2015 WL 3540857, at *2 (M.D. Tenn. June 3, 2015) ("Criminal defense attorneys

15

are not considered state actors for purposes of suit under 42 U.S.C. § 1983."). Nor are there any particular allegations against these three individuals to support their nominal inclusion as defendants. Ms. Patino-Lopez is a private citizen who is likewise not a proper defendant under § 1983; her involvement with the process by which the assault charge was filed against Plaintiff does not transform her into a state actor. *Smith v. Howell*, No. CIV-14-1374-HE, 2015 WL 4878354, at *6–7 (W.D. Okla. June 23, 2015) (citing, e.g., *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009)). Furthermore, the arresting officer, John Doe, is not alleged to have violated Plaintiff's constitutional rights, but only to have failed to adequately investigate and charge Ms. Patino-Lopez with trespassing and breaking-and-entering (Doc. No. 1 at 11), while Parole Officer Adams is only alleged to have performed her official function of initially reporting the parole violation. None of the aforementioned Defendants are appropriately named, particularly with regard to the only viable claim of the complaint.

The Tennessee Board of Probation and Parole and its members (in their official capacities) are the only proper Defendants to Plaintiff's equal protection claim and corresponding request for injunctive and declaratory relief. All other Defendants will be dismissed from the action.

**III. Conclusion**

In summary, the Court finds that the complaint states a colorable claim against the Tennessee Board of Probation and Parole and its members in their official capacities, for violation of Plaintiff's equal protection rights. This claim survives the required PLRA screening and shall proceed for further development of the record. The remaining claims of the complaint shall be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief can be granted.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE